IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-00043-WYD-KLM

BITUMINOUS CASUALTY CORPORATION, an Illinois corporation,

     Plaintiff,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

     Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on Defendant Hartford Casualty Insurance Company's ["Hartford"] Motion to Dismiss Counts III, IV and V of Plaintiff Bituminous Casualty Corporation's Amended Complaint filed August 23, 2012.  A response was filed on October 5, 2012, a reply was filed on November 1, 2012, and a surreply was filed on December 28, 2012.  By Order of October 9, 2012, Hartford's motion was converted to a motion for summary judgment.  For the reasons discussed below, Hartford's motion is granted in part and denied in part.

I.    <u>FACTUAL BACKGROUND</u>

This action arises out of a liability insurance coverage dispute in connection with an underlying lawsuit alleging that a condominium development [the "Project"] in Durango, Colorado was defectively constructed.  The underlying lawsuit was brought in January 2010 by the Rivergate Lofts Condominium Owners Association against Rivergate Lofts Partners, LLC ["RLP"], Genex Construction, LLC ["Genex"] and other

parties for damages for the defective construction of the Project and resulting property damage.  The underlying action has since settled, but a dispute remains between Bituminous Casualty Corporation ["Bituminous"], who insured Genex, and Hartford Casualty Insurance Company ["Hartford"], who insured RLP.  RLP was the Project's developer.  Genex acted, among other things, as the original general contractor and soils contractor.  Bituminous alleges that Hartford also insured Genex for liabilities arising out of Genex's actions as manager of RLP, as opposed to Genex's liabilities as the general contractor and soils contractor.  Following a tender for defense and indemnity by Genex, Hartford denied coverage to Genex on the premise that, among other things, the underlying claims did not allege liability flowing from Genex's role as the manager of RLP.  (Hartford Denial Letter dated September 23, 2011, Ex. A to Pl.'s Resp.)[1]

The underlying complaint alleged that Genex was the alter-ego of RLP or the agent and representative of RLP.  It also alleged that Genex was liable for the conduct of RLP as it related to the design, development, improvement, construction, repair, marketing and sale of ownership interests in the condominium development.  (Plaintiff's

---

[1]  Hartford asserts that the documents attached to Bituminous' response should not be considered as they are not property authenticated by an affidavit, citing cases relying on Fed. R. Civ. P. 56(e) as previously drafted.  I reject this argument.  Prior to the revisions of Rule 56 in 2010, Rule 56 required that all documents be authenticated.  *See Alfonso v. SSC Pueblo Belmont Operating Co., LLC*, No. 11-cv-01186-PAB-KLM, 2012 WL 2863128, at *1 (D. Colo. July 11, 2012).  The amendment to Rule 56 "deleted that requirement and replaced it with 'a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method ... [for] doing so at trial.'"  *Id.* (quotation omitted).  An objection to evidence must now be posited on the fact "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Here, Hartford has not shown that the documents cannot be presented in a form that would be admissible at trial, and I note that Bituminous in its Surreply authenticated or has stated it will authenticate the documents.

Am. Compl. at ¶ 9; Underlying Complaint and Jury Demand at ¶ 32, Ex. B to Pl.'s Resp.)

Following Hartford's denial of coverage, a mediation occurred in the underlying case on September 30, 2011.  (Aff. of John Rodewald, Esq. ["Rodewald Aff."] at ¶ 2, Ex. C to Pl.'s Resp.)  On behalf of RLP, Mr. Rodewald stated that various Hartford representatives attended the mediation in person, including coverage counsel Chuck Morrissey and claim handler Tim Brady.  (*Id.* at ¶ 3.)  Hartford denies that it retained the defense counsel that represented RLP at the mediation and that Chuck Morrissey was present at the mediation "on behalf of RLP."

At the mediation, Bituminous agreed to pay $6,900,000 to secure a release of Genex and its principal, Dale Kneller, in the underlying case.  (Rodewald Aff. at ¶ 4; *see also* Settlement Agreement and Release dated October 31, 2011, at ¶ 3-5, Ex. D to Pl.'s Resp.)  As part of the settlement, Genex and Kneller agreed to assign to Bituminous all "manner of rights or claims…against any Person or party, in connection or in any way related to the RiverGate Lofts Project or the Underlying Action…."  (Assignment dated September 30, 2011, at ¶ 2, Ex. E to Pl.'s Resp.)

On September 30, 2011, Bituminous' counsel Mr. Rodewald states that he informed representatives of Hartford of the settlement on behalf of Genex and Kneller. He further informed Hartford that it would pursue recovery of monies paid on behalf of Genex.  (Rodewald Aff. at ¶ 5, Ex. C to Pl.'s Resp.)[2]

---

[2]  While Hartford contends in its reply that these statements by Bituminous' counsel are "specious" and that they are not accompanied by the same evidentiary foundation the Court would require for trial, I reject this argument.  Hartford has cited no Tenth Circuit authority for its argument, and I find that the

Hartford settled the underlying claims against RLP.  While Bituminous claims that the settlement occurred the week of October 3, 2011, Hartford clarifies that a full agreement resolving all of the claims was not reached until November 22, 2011.  Before Hartford reached the settlement on behalf of RLP, Bituminous claims that Genex and Kneller (for his roles on behalf of Genex) had no exposure in the underlying case because Bituminous had already settled the claims against them on September 30, 2011.  (Rodewald Aff. at ¶ 6, Ex. C to Pl.'s Resp.)[3]  It also claims that Genex possessed no rights to release Hartford from claims that Bituminous was entitled to pursue.  (*Id.*) These claims are denied by Hartford.

The Bituminous policies issued to Genex contain the following provision:

**8. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

*(See* Bituminous Policy, Ex. F to Pl.'s Resp.)  The Hartford policies issued to RLP, and under which Genex was insured as manager of RLP, contain a nearly identical

---

unpublished case cited by Hartford, *Sundaram v. Amer. Flange & Mfg. Co., Inc.*, No. 92 C 7094, 1994 WL 27889 (N.D. Ill. Jan. 30, 1994), is not persuasive and is distinguishable.  I also reject Hartford's argument that Mr. Rodewald's affidavit should be disregarded because it fails to reveal "when, where, to whom, and in what context" the comments were made.  (Hartford's Reply at 4).  To the contrary, the affidavit states the "when" as September 30, 2011, the "where" as Denver, Colorado, and the "to whom" as Hartford's specific agents identified in ¶ 3 of the affidavit.

[3]  I reject Hartford's argument that Mr. Rodewald did not have personal knowledge of the issues alleged in his affidavit, as he alleges that he does have such personal knowledge.  Further, it is reasonable to believe that he would be familiar with the statements in his affidavit based on his position as Bituminous' counsel in the underlying suit.  *See Alpha Prime Dev. Corp. v. Holland Loader Co., LLC*, No. 09-cv-01763-WYD-KMT, 2010 WL 2691774, at *2 (D. Colo. July 6, 2010) and cases cited therein.

provision, also entitled "Transfer of Rights of Recovery Against Others to Us." (*See* pertinent portion of Hartford Policy, Ex. G to Pl.'s Resp.)

On November 22, 2011, Hartford entered into a settlement agreement with its named insured, RLP.  (*See* Settlement and Release Agreement at pp. 1-2, Ex. H to Pl.'s Resp.)  Although Genex had assigned to Bituminous all of its claims against third parties in September of 2011, and had been completely released from all liability in the underlying action in October of 2011, the November release crafted by Hartford included Genex as a releasor.  (Ex. C to Pl.'s Resp. at ¶ 7.)  Bituminous asserts that Hartford did this notwithstanding its prior denial of coverage to Genex and without contribution to the settlement of the claims against Genex.

In reply to the previous paragraph, Hartford denies that it had knowledge of the settlement or terms thereof between Bituminous and Genex, any purported assignment that was part of the settlement, or any of the facts in the previous paragraph prior to the time that Hartford received the release from Genex.  (Aff. of Timothy Patrick Brady ¶¶ 10-11, Ex. A to Hartford's Reply and Settlement and Release Agreement attached as Ex. A-1; Affidavit of John W. Madden, III ["Madden Aff."] ¶ 7, Ex. B to Hartford's Reply; Affidavit of Charles F. Morrissey ["Morrissey Aff."] ¶ 7, Ex. D to Hartford's Reply.) Further, Hartford asserts that at the time it received the release, neither Genex nor Bituminous had made a claim against RLP or Hartford.  (Morrissey Aff. ¶ 8, *id.*) Genex/Bituminous first brought a claim against RLP after Hartford received the release from Genex.  (*Id.*)  While Bituminous admits that neither it nor Genex had asserted a formal claim against RLP or Hartford prior to Hartford procuring the release from Genex,

it asserts that Genex had previously claimed coverage as an insured under the policies issued by Hartford to RLP.  (Correspondence of September 13, 2011, Ex. A to Surreply; Aff. of Walter J. Downing, Esq., Ex. C to Surreply.)

The release obtained by Hartford from Genex obligated Genex to "represent, warrant, and agree that…[it] [would]…not in any way assist any Person in the establishment of any Claim against Hartford."  (Pl.'s Resp., Ex. H at ¶ 3.6.)  Bituminous claims that Hartford procured this from Genex even though Genex had promised to help Bituminous enforce its subrogation rights against Hartford via the standard terms of the Bituminous policy issued to Genex and the terms of the Assignment given to Bituminous by Genex.  This is denied by Hartford.

On January 6, 2012, Bituminous filed its initial Complaint asserting claims for breach of contract and equitable contribution/reimbursement against Hartford.  It alleged that (a) Bituminous and Hartford each insured Genex with respect to the Project; (b) Bituminous and Hartford each had a duty to defend Genex for the underlying lawsuit; and (c) because Bituminous defended Genex but Hartford did not, Bituminous is entitled to equitable contribution/reimbursement from Hartford and money damages for contract based on an assignment of Genex's alleged contract rights against Hartford to Bituminous.

Hartford filed an answer denying the material allegations and asserting several affirmative defenses.  One of those defenses included the release pursuant to a settlement agreement in which Genex released all of its claims against Hartford in

connection with all potential liabilities arising from the Project.  Such a release allegedly extinguished all potential claims Bituminous might bring against Hartford.

Thereafter, Bituminous filed an Amended Complaint which added three tort causes of action pled in the alternative.  These claims are intentional interference with Bituminous' contracts (Count III), civil conspiracy (Count IV) and damages resulting from the wrong of another (Count V).  Bituminous admits that it will only sustain damages on its claims for intentional interference with contract and civil conspiracy if the Release obtained by Hartford from Genex is held to be admissible.

Between the filing of Bituminous's Complaint and its Amended Complaint, the jury in *Rivergate Loft Condominium Owners Ass'n v. Rivergate Lofts Partners, LLC et al.* (the "underlying action") concluded that $1,000,000 of the settlement paid by Bituminous was for Genex's liability as manager of RLP.  (Pl.'s Am. Compl. at ¶ 20; *see also* Special Verdict Form–RLP's Claim for Indemnification Against Genex–finding that RLP paid nothing on behalf of Genex for its negligent acts or omissions; Special Verdict Form–Bituminous's Claim for Indemnification Against RLP–finding that the underlying plaintiff brought "a lawsuit claiming that Genex was liable to the Association for acts or omissions arising from Genex's performance of its duties as Manager of RLP," that the settlement funded by Bituminous to obtain a release of Genex in the underlying case was reasonable and entered into in good faith, and that $1,000,000 was paid by Bituminous "for Genex's liability as Manager of RLP"; Entry of Judgment dated August 9, 2012, attached collectively to Pl.'s Resp. as Exhibit I.)  The jury verdict in the underlying case is the subject of a pending appeal, but has been secured by a

supersedeas bond in the amount of $1,250,000.  (Madden Aff. and Exs. B-1, B-2 and B-3 thereto.)

II.    ANALYSIS

A.    Introduction and Standard of Review

Hartford contends that the three new tort claims in the amended complaint seek to avoid the effect of Genex's release of Hartford by purporting to allege that Hartford improperly induced Bituminous' assignor, Genex, to breach a settlement agreement it entered into with Bituminous.  However, it asserts that summary judgment on these claims is appropriate as Bituminous has failed to allege facts or produce evidence sufficient to demonstrate the viability of these claims.

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *Horizon/ CMS Healthcare Corp.*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Atl. Richfield Co. v. Farm Credit Bank of*

*Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  When applying the

summary judgment standard, the court must "'view the evidence and draw all

reasonable inferences therefrom in the light most favorable to the party opposing

summary judgment.'"  *Id.* (quotation omitted).  All doubts must be resolved in favor of

the existence of triable issues of fact.  *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892

(10th Cir. 1991).

      B.      Whether Summary Judgment is Appropriate

            1.      Intentional Interference with Contractual Relations

Colorado recognizes the tort of intentional interference with contractual relations.

*Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210

(Colo. 1984).  To be liable for such a claim, "a defendant must 1) be aware of a contract

between two parties, 2) intend that one of the parties breach the contract, 3) and induce

the party to breach or make it impossible for the party to perform the contract."

*Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 871 (Colo. 2004).  To be

actionable, "an interference with the performance of a contract must also be improper."

*Mem'l Gardens*, 690 P.2d at 210.  As explained by the Colorado Supreme Court, "the

tort exists to protect parties to a contract; accordingly, it is the conduct of the third

person *who is not a party to the contract* that is punished for inducing a breach or

preventing performance of the contract."  *Colo. Nat'l Bank of Denver v. Friedman*, 846

P.2d 159, 170 (Colo. 1993) (emphasis in original).

In the case at hand, Hartford asserts that Bituminous cannot satisfy these

elements.  First, it is argued that Bituminous fails to allege any facts showing that

Hartford knew of Genex's assignment to Bituminous.  Additionally, it argues that absent notice to Hartford of the assignment from Genex or the acquisition of subrogation rights, the release by Genex as an assignor to Hartford as an obligor is effective against Bituminous, an assignee.  Thus, Hartford asserts that it can only have obligations to Bituminous as the assignee of Genex if it received notice of the Assignment and/or subrogation rights before Hartford obtained the release from Genex, and that Plaintiff has not made this showing.

I find that there are genuine issues of material fact about whether Hartford had knowledge of the settlement between Bituminous and Genex and the assignment. While Hartford denies actual knowledge of the assignment of claims, Bituminous presented evidence that after settling the liability of Genex to whom Hartford had purportedly wrongfully denied coverage, Bituminous' counsel in the underlying action advised Hartford of the settlement and of its intention to pursue recovery from Hartford. Accordingly, I reject this argument of Hartford.

Hartford also argues that Bituminous fails to allege any facts showing that Hartford intended to induce a breach of the contracts, *i.e.*, the Bituminous Policies and the alleged assignment.  Further, it is argued that Bituminous fails to allege any facts showing that Hartford engaged in conduct which produced a breach of contract–there are allegedly no factual allegations regarding what words and/or conduct Hartford engaged in.  There are also allegedly no factual allegations regarding the terms and provisions of the Bituminous Policies or the assignment that Genex allegedly breached or the manner in which the Release constitutes a breach thereof.

-10-

In response, Bituminous argues, and I agree, that the facts supporting Hartford's alleged tortious interference with the contractual relationship between Genex and Bituminous are evidenced by the circumstances and terms of the release procured from Genex by Hartford.  Bituminous asserts that although Hartford had previously denied coverage and declined to contribute to the settlement of the claims against Genex, Hartford procured a release from Genex that contractually obligated Genex to breach its contractual obligations to Bituminous.  Hartford allegedly procured this release *after* being informed in September 2011 that Bituminous had paid to settle the claims against Genex and of Bituminous's intention to seek recovery of payments made on Genex's behalf, and at a time when Genex had no liability exposure in the underlying case.  Again, there are genuine issues of material fact that preclude summary judgment on this issue.

At a minimum, I find that there are genuine issues of material fact that support Bituminous' argument that upon being advised of the Bituminous settlement, Hartford had constructive knowledge that Genex was contractually obligated under the Bituminous policies to transfer its rights of recovery to Bituminous and to do nothing to impair those rights.  Despite such knowledge, Hartford purported to obligate Genex to "represent, warrant, and agree that…[it] [would]…not in any way assist any Person in the establishment of any Claim against Hartford."  (Settlement and Release Agreement, ¶ 3.6, Ex. H to Pl.'s Resp.)

Next, Hartford asserts that Bituminous fails to allege any facts showing that Hartford's alleged interference with Bituminous 'policies and/or the alleged assignment

from Genex was improper.  It argues in that regard that it was not illegal for it to procure

a release from Genex.  A tortious interference claim is not, however, limited to unlawful

conduct.  It also arises when the interference was improper.  *See Energy Acquisition*

*Corp. v. Millinium Energy Fun, LLC*, 611 F. Supp. 2d 1147, 1162 (D. Colo. 2009).  "The

term 'improper' directs courts to examine various factors, including the societal

interests" and the interests of the parties before determining whether a person's conduct

in intentionally interfering with a contract is actionable.  *Mem'l Gardens*, 690 P.2d at

210.  Thus, the court must weigh the interest shared by society and the plaintiff in the

security of established contracts against the defendant's interest in freedom of business

action and society's concomitant interest in free competition.  *Id.*  Other relevant factors

to be considered include the nature of the actor's conduct, the actor's motive, the

interests of the other with which the actor's conduct interferes, the interests sought to be

advanced by the actor, the proximity or remoteness of the actor's conduct to the

interference and the relations between the parties.  *Amoco Oil Co. v. Ervin*, 908 P.2d

493, 500 (Colo. 1995).

Bituminous argues, and I agree, that the circumstances and terms of the release

obtained by Hartford demonstrate disputed issues of material fact concerning whether

Hartford's conduct was improper.  Having denied coverage to Genex, and having failed

to contribute anything to settle the claims against Genex, Hartford's inclusion of Genex

as a releasor in its agreement with RLP supports the inference that such inclusion was

undertaken solely to prejudice the rights of Bituminous.  *See Trimble v. City & Cnty. of*

*Denver*, 697 P.2d 716, 726 (Colo. 1985) ("If the actor is motivated solely by the desire to

harm one of the contracting parties or to interfere in the contractual relations between those parties, the interference is certainly improper").  Indeed, both the Bituminous and Hartford policies contain standard terms requiring the insured to transfer its rights of recovery to payments made by the insurer and to take no action impairing those rights. Construing the evidence in the light most favorable to Bituminous, a reasonable jury could conclude that the release obtained by Hartford evidences both a breach of Genex's contractual obligations to Bituminous and Hartford's intent to cause that breach.  Hartford's purported motive for procuring the release–to avoid paying what it rightfully owed under policies that insured Genex–is further indicia of improper conduct.

Hartford's argument that it remained free to procure a release from Genex absent notification of the Bituminous settlement and assignment fails for two reasons. First, as discussed above, the factual circumstances surrounding Hartford's procurement of the release raise disputed issues of fact whether Hartford had notice of the Bituminous settlement and of Genex's transfer of rights to Bituminous under principles of both contractual subrogation and assignment.

Second, the language omitted from Hartford's quotation of the Restatement (Second) of Contracts is revealing.  The full quotation reads as follows:

> Except as stated in this Section, notwithstanding an assignment, the assignor retains his power to discharge or modify the duty of the obligor *to the extent that the obligor performs or otherwise gives value* until but not after the obligor receives notification that the right has been assigned and that performance is to be rendered to the assignee.

Restatement (Second) Contracts § 338 (emphasis on omitted language).  Here,

Bituminous contends that Hartford made no payment on behalf of Genex or otherwise

provided consideration for the release upon which it relies.  It allegedly denied coverage to Genex, declined to participate in settlement discussions on behalf of Genex, and never paid anything to satisfy its contractual obligations to Genex.  If the evidence supports these disputed facts at trial, the release Hartford obtained from Genex may be unenforceable against Bituminous under the rule stated in the Restatement. Additionally, the absence of consideration for the release procured by Hartford is further evidence that the release may have been obtained for the principal purpose of tortiously interfering with Genex's contractual obligations to Bituminous.

I also find that Hartford has not shown a clear, legally protected interest in its attempt to defeat Bituminous's contractual rights by engineering a release from Genex, after knowing that Bituminous had settled Genex's liability in the underlying case and intended to pursue recovery of monies paid on behalf of Genex.  In other words, it has not shown that it had an absolute contractual, constitutional, or statutory right to obtain the release under these circumstances.  By contrast, in the *Energy Acquisition Corp.* case relied on by Hartford, the defendant had an undisputed contractual right to engage in the conduct upon which the tortious interference claim was premised.  *Id.*, 611 F. Supp. 2d at 1163.[4]

---

[4]  The other cases relied on by Hartford on this issue are also distinguishable and thus inapposite. *See Caven v. Am. Fed. Sav. & Loan Assoc.*, 837 F.2d 427, 432 (10th Cir. 1988) (defendant had "an absolute right to insist on an increase in the interest rate under the terms of the modification agreement"); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848 (10th Cir. 1999) (summary judgment proper where allegedly improper means consisted of statements of opinion protected by the First Amendment); *Martin v. Montezuma-Cortez Sch. Dist. RE-1*, 841 P.2d 237, 251 (Colo. 1992) (striking teachers could not be held liable for tortious interference with contract because strike was legal under Colorado statutory law).

Further, even if Hartford possessed a legally protected interest to procure a release from Genex, the steps taken to protect that interest must be undertaken in "good faith." *See* Restatement (Second) of Torts § 773 (1979) (cited by *Energy Acquisition Corp.*, 611 F. Supp. 2d at 1161). I find that a reasonable jury could conclude that the steps taken by Hartford to protect any legally protected interest were not taken in good faith. As noted previously, there are genuine issues of material fact as to whether Hartford was aware of the Bituminous settlement and that Bituminous intended to pursue recovery of the monies paid on behalf of Genex. Hartford does not dispute that it paid nothing to settle the liability claims against Genex in the underlying litigation, or that Genex had no further liability exposure in the underlying case when Hartford obtained the release from Genex. Nor, does Hartford's Reply provide any explanation why Genex would be included as a releasor in connection with Hartford's settlement of the liability claims against RLP.

Although Hartford contends that it did not have actual knowledge that Genex had assigned its rights to Bituminous, it does not dispute that the Bituminous Policy contractually obligated Genex to transfer its rights to Bituminous to recover all or part of any payment made by Bituminous and to do nothing to impair those rights. Likewise, the Hartford Policies issued to RLP provide that, "[i]f the insured has rights to recover all or part of any payment we have made under the policy, those rights are transferred to us. The insured must do nothing after loss to impair them." (Ex. F to Pl.'s Resp.) I agree with Bituminous that based on Mr. Rodewald's testimony and the contents of the Bituminous and Hartford Policies, a reasonable jury could conclude that Hartford was

aware that Bituminous had settled the liability claims against Genex and thereby acquired the rights of Genex under the standard liability policy provisions contained in both the Bituminous and Hartford Policies.  Together with the absence of any consideration supporting the release obtained by Hartford from Genex, an insured to whom Hartford wrongfully denied coverage and on behalf of whom Hartford refused to contribute any settlement monies, the jury could also conclude that Hartford improperly leveraged its coverage duties to RLP to procure a release from Genex for the sole purpose of attempting to interfere with Bituminous's rights as assignee and subrogee of Genex.

Hartford also argues, citing case law from other jurisdictions, that a subrogation claim does not apply to co-insurers because that doctrine is intended as a loss-shifting mechanism to enable insurers to recover from primarily liable tortfeasors.  Bituminous asserts in response that although that is the conventional form of subrogation, it is not the only form of subrogation recognized under Colorado law.  I agree, and reject Hartford's argument.  The Colorado Supreme Court has identified subrogation as a proper means of recovery by an insurer who has honored its obligations, such as Bituminous, from a co-insurer, such as Hartford, that has not.  *See Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741, 747-748 (Colo. 1992) (following discussion of insurer's right to contribution in this context, the court stated, "[i]n addition, having paid the settlement on behalf of the [insured], [the insurer] is subrogated to the rights of the [insured]…") (citing with approval *Forum Ins. Co. v. Ranger Ins. Co.*, 711 F. Supp. 909,

914 (N.D. Ill. 1989) (insurer can recover share of defense costs and indemnity payment from co-insurer under *either contribution or a subrogation theory*)).

Finally, Hartford argues that Bituminous fails to show it suffered any damages, and that since Bituminous' claims are not for unliquidated amounts which a jury must decide, the items of damages must be specifically pleaded under Fed. R. Civ. P. 9(g). Hartford further argues that the only evidence Bituminous has submitted of its damages is the jury verdict in the underlying case, which according to Hartford represents the liquidation and limitation of Bituminous' alleged subrogation and assignment rights against Hartford.  In light of Bituminous' status as a judgment creditor in that case–as secured by the bond–Hartford argues that the release is irrelevant and that Bituminous has not and cannot sustain damages as a result of the release.

Bituminous asserts in response that Hartford's argument is flawed because the judgment against RLP in the underlying action was based upon duties owed by Hartford to Genex as its insured.  Bituminous is a judgment creditor of RLP and that judgment is presently appealed under bond.  The judgment against RLP is based on Genex's rights to contractual indemnification from RLP as the manager of RLP under RLP's Operating Agreement.  This action, however, involves the separate and distinct rights of Genex as an insured under the policies Hartford issued to RLP

I agree with Bituminous that summary judgment is also not proper on this ground. A judgment against RLP is not a judgment against Hartford.  As a judgment creditor of RLP, Bituminous may collect on the judgment, among other ways, by garnishing the policies Hartford issued to RLP.  By contrast, a judgment against Hartford based on its

breach of contractual duties to Genex as an insured under the Hartford Policies would be collectible directly from Hartford.  If the release procured from Genex by Hartford is enforceable, a matter which Bituminous denies, Bituminous would sustain damages flowing from Hartford's intentional interference with contract and civil conspiracy.  Until the release from Genex is held to be unenforceable, the possibility of damages in tort remains and summary judgment on this basis is denied.[5]

2.     Civil Conspiracy

To establish a civil conspiracy claim under Colorado law, "'a plaintiff must show (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as the proximate result.'"  *Vickery v. Evelyn V. Trumble Living Trust*, 277 P.3d 864, 871 (Colo. App. 2011) (quoting *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995)).  "Civil conspiracy is a derivative cause of action that is not actionable per se."  *Id.*

Hartford argues that because it is entitled to summary judgment on the intentional interference with contractual relations claim, it is also entitled to summary judgment on the civil conspiracy claim as it is a derivative cause of action.  It also contends that Bituminous has not shown that Genex and Hartford had a meeting of the minds to deprive Bituminous of its rights, and has not shown one or more overt acts. While Bituminous alleges that the release is an overt action, Hartford argues that it fails to show how or why or on what basis the release was unlawful.  Where there is no

---

[5]  I also reject Hartford's alternative argument that this claim and the civil conspiracy claim should be reviewed and dismissed under the Rule 9(b) standard.  I find that Fed. R. Civ. P. 9(b) is inapplicable to these claims are they are not grounded in fraud.

predicate unlawful act, there can be no conspiracy.  *See Vickery*, 277 P.3d at 871 ("'If,

however, 'the acts alleged to constitute the underlying wrong provide no cause of

action, then there is no cause of action for the conspiracy itself.'. . .a civil conspiracy

claim fails in the absence of a legal wrong to support it") (quotation omitted)).

I agree that civil conspiracy is a derivative cause of action that is predicated on

an underlying wrong, typically a tort.  *See Vickery*, 277 P.3d at 871.  Here, Bituminous

asserts that the underlying wrong is Hartford's tortious interference with contract, and

argues that a civil conspiracy claim based on tortious interference with contract states a

valid claim for relief.  I agree, and find that Bituminous' civil conspiracy claim survives

summary judgment as a derivative claim based on the claim of intentional interference

with contract claim.  *See WaveDivision Holdings, LLC v. Highland Capital Mgmt. LP*,

No. 08C-11-132-JOH, 2010 WL 1267126, at *6 (Del. Super. Mar. 31, 2010) ("Because

the complaint states a cause of action for tortious interference, it also states a cause of

action for the . . . related tort[] of civil conspiracy.") Since there are disputed issues of

material fact sufficient for the tortious interference claim to survive summary judgment, I

find there are likewise disputed issues of fact concerning the wrongful act element of the

civil conspiracy claim.

As to the elements of a civil conspiracy, Bituminous argues and I agree that the

release procured by Hartford from Genex creates issues of fact as to the first three

elements of the civil conspiracy claim.  The release identifies two or more persons

(Hartford and Genex), an object to be accomplished (the agreement between Hartford

and Genex that Genex would breach its contractual obligation not to impair Bituminous's

rights to recovery), and a meeting of the minds on the course of action (entry into an agreement requiring Genex to breach its contractual obligations to Bituminous.) Bituminous also contends that at the time Hartford procured the release from Genex, both Genex and Hartford knew that Bituminous had paid to obtain a complete release of Genex and was contractually subrogated to the rights of Genex.  I find that the civil conspiracy claim is supported by sufficient evidence to require its submission to the jury. *See Martinez v. Winner*, 548 F. Supp. 278 (D. Colo. 1982) (conspiracy may be implied from course of conduct and other circumstantial evidence), *rev'd in part on other grounds*, 771 F.2d 424 (10th Cir. 1985).

Hartford also argues, however, that Bituminous cannot state a cause or action for either intentional interference or conspiracy against Genex (the only purported co-conspiracy) because Genex is a party to the contracts with which the conspiracy allegedly interfered.  It is true that Genex could not be liable for tortiously interfering with a contract to which it was a party.  *Logixx Automation v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1231 (Colo. App. 2002) ("there can be no conspiracy by two or more parties to a contract to breach that contract").  That does not mean, however, that Genex cannot be among the two or more parties necessary to conspire to commit that tort.  The *Logixx* court distinguished the foregoing proposition from cases where "one of the conspiring parties was a stranger to the contract." *Id.*  As Hartford is a stranger to the contracts between Genex and Bituminous, this case supports the claim for civil conspiracy.

Finally, Hartford argues that Bituminous fails to allege any facts or show what damages Hartford's alleged acts caused, or the items and/or bases or categories of such damages, as required by Fed. R. Civ. P. 9(g).  I reject this argument for the same reasons discussed above in connection with the intentional interference with contract claim.

### 3.   Damages Resulting from Wrong of Another

Bituminous' Count V attempts to assert that Hartford owes Bituminous damages under the "wrong of another" doctrine.  Hartford argues that damage resulting from the wrong of another is not a separate cause of action recognized under Colorado law.  I agree, as the Colorado Supreme Court has made clear that "the wrong-of-another doctrine . . . does not establish a stand-alone cause of action" under Colorado law. *Rocky Mt. Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1071 (Colo. 2010). Accordingly, summary judgment is granted on this claim.[6]

### III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant Hartford Casualty Insurance Company's ["Hartford"] Motion to Dismiss Counts III, IV and V of Plaintiff Bituminous Casualty Corporation's Amended Complaint, which was converted to a motion for summary judgment, is

---

[6]  Bituminous claims it may be able to recover damages under this doctrine, but this issue is premature for resolution.  I note on that issue, however, that the court in *Rocky Mountain Festivals* stated that "the doctrine is but an acknowledgment that the litigation costs incurred by a party in separate litigation may sometimes be an appropriate measure of damages against another party." *Id.* at 1071. While it "recognizes that attorneys' fees may be used in calculating damages; it does not replace the threshold inquiry of the defendant's liability for a wrongful act." *Id.*

**GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** as to the fifth claim for

damages resulting from wrong of another, and **DENIED** as to the third and fourth claims

for intentional interference with contractual relations and civil conspiracy.

Dated:  February 6, 2013

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge