IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-00043-WYD-KLM

BITUMINOUS CASUALTY CORPORATION, an Illinois corporation,

      Plaintiff,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

      Defendant.
_____

HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation,

      Third-Party Plaintiff

v.

CANAL INSURANCE COMPANY, a South Carolina corporation,

      Third-Party Defendant.

---

## ORDER

---

I.  <u>INTRODUCTION</u>

THIS MATTER is before the Court on Third-Party Defendant Canal Insurance

Company's Motion to Dismiss Hartford Casualty Insurance Company's Amended Third-

Party Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) filed October 30, 2012.  A response

was filed on November 20, 2012, and a reply was filed on December 6, 2012.

Canal Insurance Company ["Canal"] contends that Hartford Casualty Insurance

Company ["Hartford"] has not pled sufficient facts in the Amended Third-Party

Complaint to demonstrate that Canal had a duty to defend, and that Canal thus has no duty to indemnify.  Accordingly, Canal asserts that dismissal under Rule 12(b)(6) is appropriate.  For the reasons discussed below, Canal's motion is denied.

II.    FACTUAL BACKGROUND

This action arises out of a liability insurance coverage dispute in connection with an underlying lawsuit filed in January 2010 alleging that a condominium development in Durango, Colorado [the "Project"] was defectively constructed.  According to Canal's motion, that lawsuit was brought by the Rivergate Homeowners Association [the "Association"] against Rivergate Lofts Partners, LLC ["RLP"], Genex Construction, LLC ["Genex"] and other parties for damages for the defective construction of the Project. The Association's complaint in the underlying action alleged that Genex was liable to the Association for various construction defects and resulting property damage. (Association's Compl. ¶ 14, Ex. A to Am. Third-Party Comp., ECF No. 51.)  That complaint is discussed in more detail in Section III.B., *infra*.

The underlying action has settled, but a dispute remains between Bituminous Casualty Corporation ["Bituminous"], who insured Genex, and Hartford, who insured RLP.  According to the Amended Third-Party Complaint in this action, the underlying case settled in the fall of 2011 for $6,900,000.  (Am. Third-Party Compl., ¶ 8.)  Canal did not contribute to that settlement.  (*Id.* ¶ 15.)

Hartford asserts third-party claims in this case against Canal.  Hartford sues for declaratory judgment and for equitable contribution, "wherein Hartford seeks a declaration determining the obligations of Canal and for contribution in the event that

the Court determines that Hartford owes any defense or indemnity obligation to Genex with respect to the Underlying Action." (Am. Third-Party Compl. ¶ 1.)  Both claims are based upon the premise that Canal owed a duty to defend and/or indemnify Genex in the underlying action.  Bituminous does not assert any claim against Canal.

Canal issued General Liability Insurance Policy number CGL 013966 to Genex, effective March 31, 2002 to March 31, 2003.  (Am. Third-Party Comp. ¶ 12 and Ex. B thereto.)  Canal issued General Liability Insurance Policy number CGL 019604 to Genex, effective March 31, 2003 to March 31, 2004.  (Am. Third-Party Compl. ¶ 12 and Ex. C thereto.)  The policies extend coverage for "property damage" caused by an "occurrence" during the applicable policy periods – March 31, 2002 to March 31, 2003 and March 31, 2002 to March 31, 2004.  (*Id.*)

Canal initially agreed to defend Genex under a reservation of rights but later withdrew from Genex's defense in the underlying action.  Canal asserts that Bituminous did not then and does not now contest Canal's coverage position.  Hartford did so only after Bituminous filed this action and sought to add additional claims against Hartford.

III.   <u>ANALYSIS</u>

A.   <u>Standard of Review</u>

In reviewing a motion filed pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of County of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).  To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege that 'enough factual matter, taken as true, [makes] his claim for

relief ... plausible on its face.'" *Id.* (quotation and internal quotation marks omitted).  "A

claim has facial plausibility when the [pleaded] factual content [ ] allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009)).

A plaintiff "must include enough facts to 'nudge[] [its] claims across the line from

conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir.

2011) (quotation omitted).  Conclusory allegations are not sufficient to survive a motion

to dismiss.  *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

B.    Whether Canal Has a Duty to Defend

The duty to defend "is determined by an examination of the allegations in the

underlying complaint against the insured."  *Compass Ins. Co. v. City of Littleton*, 984

P.2d 606, 614 (Colo. 1999); *see also Gen. Security Indem. Co. v. Mountain States Mut.

Cas.*, 205 P.3d 529, 532 (Colo. App. 2009) ("In determining whether a duty to defend

exists, a trial court must limit its examination to the four corners of the underlying

complaint".).  "The duty to defend pertains to the insurance company's duty to

affirmatively defend its insured against pending claims."  *Constitution Assocs. v. New

Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).  The duty to indemnify, on the

other hand, "relates to the company's duty to satisfy a judgment entered against the

insured."  *Id.*  The Colorado Supreme Court explained as to these two duties:

> The duty to defend is triggered more easily than is the duty to indemnify.
> Generally, the duty to defend arises where the alleged facts even *potentially*
> fall within the scope of coverage, but the duty to indemnify does not arise
> unless the policy *actually* covers the alleged harm. See *Hecla Mining Co. v.
> New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo.1991). Where there

is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.

*Id.* (emphasis in original).

The issue before me in connection with the motion to dismiss is the duty to defend. If I find that there is no duty to defend, there consequently will not be a duty to indemnify. The Colorado Supreme Court "has set a high standard for an insurance company seeking to avoid its duty to defend", stating:

> [a]n insurer seeking to avoid its duty to defend an insured bears a heavy burden, as the duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. "The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

*Compass Ins. Co.*, 984 P.2d at 613-14 (quotation omitted). However, "[w]here there is no factual or legal basis for which the insurer might eventually be held liable to indemnify the insured, the insurer does not have a duty to defend." *Globe Indem. Co. v. Travelers Indem. Co. of Ill.*, 98 P.3d 971, 977 (Colo. App. 2004).

As noted in Section II, *supra*, the Canal policies are "occurrence" policies. Such polices protect an insured from third-party claims based upon occurrences within a specific policy period. *Leprino v. Nationwide Prop. and Cas. Ins. Co.*, 89 P.3d 487, 490 (Colo. App. 2003). "Under such policies, coverage is triggered only if the third party

suffered actual damage within the policy period." *Id.*; *see also Browder v. United States Fidel. & Guar. Co.*, 893 P.2d 132, 134 (Colo. 1995). So long as the damage occurred during the policy period, coverage is available regardless of when the claim is made. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007).

Thus, the time of the occurrence "'is not the time the wrongful act was committed but the time when the complaining party was actually damaged.'" *Leprino*, 89 P.3d at 490. This is illustrated by the facts in *Leprino*, where the homeowners alleged that from 1991 through at least 1993, development of their lots "had been carried out 'in an improper and destabilizing manner,'. . . ." *Id.* The only allegation of property damage was that in 1998, "the culmination of a continuous and progressive geologic hazard process manifested itself in the form of slope failure, landslide and/or landcreep. . ." which "process has resulted in actual property damage  . . ." *Id.* at 490-91. The Colorado Supreme Court rejected the argument that the occurrence was the "improper and destabilizing" 1991-1993 operations, stating "[t]he allegations on which plaintiff relies referred to the negligence or other wrongful acts of the persons involved in preparing the lots" and "did not amount to allegations of property damage or of an 'occurrence' that would trigger coverage." 89 P.3d at 491. It concluded that "similar efforts to 'stretch the scope of accident backward in time' to reach the date of the earliest event that might be regarded as having a causal connection with the occurrence" had been rejected by the court. *Id.* (internal quotation marks omitted).

On the other hand, cases have found coverage to exist under an occurrence type policy issued to a homebuilder where there was an "ongoing, progressive condition that

existed during the policy period" that caused property damage. *Travelers Cas. and Sur. Co. v. Village Homes of Colo., Inc.,* 155 P.3d 369, 370 (Colo. 2007).  This was true even though the policy had expired and a subsequent homeowner who had not purchased the home from the builder was the one who found the damage and asserted the claim. *Id.*; *see also Hoang*, 149 P.3d at 801.

Thus, in *Hoang*, expansive soils caused damage to the foundation of the home. 149 P.3d at 800.  The damage began in 1998 but was not detected until the summer of 1999 when subsequent purchasers of the home complained of "visible cracks in the walls and ceilings. . ., as well as a separation of the exterior siding from the foundation." *Id.*  Since the damage begun in 1998 when the defendant insured the builder and the damage was caused by the builder, coverage was available under the CGL policy even though there was a change in ownership of the property.  *Id.* at 801-04.  The court noted that "[w]here property damage is gradual over some period of time, the trial court may make a reasonable estimate of the portion f the damage that is attributable to each year" and "may allocate liability to each policy triggered by the damage."  *Id.* at 802.

With the above authority in mind, I turn to the allegations of the underlying complaint to determine when the actual property damage is alleged to have occurred.  It alleges that the Association, the plaintiff in the underlying action, "was created. . .on November 3, 2004. . . ."  (Association's Compl., ¶¶ 2, 14, Ex. A to Am. Third Party Compl.)  The Declaration of Covenants and Restrictions for the Condominium provides that all "General Common Elements and Limited Common Elements shall be owned, controlled and maintained by the Association, except as provided in this Declaration."

(*Id.* ¶ 22.)  It also provides "that the "Association shall be responsible for the maintenance and repair of the of the exterior of all Condominiums, all General Elements and the Limited Common Elements."  (*Id.* ¶ 23.)

Relevant to the duty to defend at issue in Canal's motion, the Association's complaint alleges the following:

> 1.  This action involves a residential interest community known as "The RiverGate Lofts Condominiums," created pursuant to Colorado's Common Interest Ownership Act. . . .The RiverGate Lofts Condominiums consists of four residential dwelling units and two commercial buildings containing 16 commercial units.  This complaint will refer to the units, the common areas and common elements, and ll other structures, spaces and facilities that comprise the RiverGate Lofts Condominiums common interest community as the "Project."
> . . .

> 45.  At the time Defendants developed, designed, constructed and/or sold the Project, each Defendant knew or should have known, that the Project was developed, designed and/or constructed with errors, defects and deficiencies.

> 46.  Without limitation, various elements of the Units and Common Elements suffer from construction defects and deficiencies, among others, which have caused, and will continue to cause, resultant and consequential property and other damages" to the foundation system, structural and other floor systems, grading and drainage, facade (exterior cladding and sealants), roofing systems, elevated decks, balconies or walkways, mechanical and other areas.

> 47.  Upon information and belief, these and other errors, deficiencies and defects, for which the Defendants are legally liable, have caused and continue to cause the Association actual property damages and/or other losses, and consequential damages to, and the loss of use of, various elements of the Project, over time from the date those areas were first put to their intended use . The occurrence of this property damage and/or loss  of use was unmanifested and unknown to the Association until it  progressed to the point it was reasonably detectable to the Association.
> . . .

> 50.  As a result of Defendants' acts and/or omissions, the Association has sustained damages including, for example and without limitation, property damage, diminished value, past and future repair and mitigation expenses, loss

of use of all or a portion of the Project, . . . including damages, injuries or losses suffered by others, which recovery has been assigned or transferred to the Association by contract, statute or operation of law.

. . .

64.  The negligence of these Defendants in relation to the design and construction of the Project has damaged the Project, including but not limited to its Common Elements, causing the Association resultant and consequential property and other damage in an amount to be proven at trial.

(Association's Compl., Ex. A to Am. Third-Party Compl.)

Canal relies on the allegations that the Association was not created until November 2004 and that its damages to the various elements of the Project began from the date those areas were first put to their intended use.  Since the Association was not formed until November 2004, Canal argues that the Project (or any part of it) was not, and could not have been, put to its intended use prior to that time.  Thus, it is argued by Canal that the Association could not have been damaged until after it was formed, which is after both Canal policies expired.  Further, Canal contends that the underlying complaint contains no allegations of any damages during construction or any other relevant period of time that could potentially give rise to a duty to defend.  Therefore, Canal asserts that the Association did not allege any damage during the Canal policies.

Hartford contends on the other that the underlying complaint supports the finding of at least a potential for coverage under the Canal policies because it alleges that damage occurred during the construction of the Project (and therefore prior to the Association's ownership of the Project).  The complaint alleges latent construction defects and damage allegedly unknown to the Association at the time it obtained ownership and that subsequently became apparent.

I agree with Canal that paragraph 47 of the underlying complaint addressed when the actual damage to the property occurred.  It alleges that the "actual property damage and/or other losses, and consequential damage" to "various elements of the Project" occurred "over time from the date those areas were first put to their intended use."  However, I disagree with Canal as to what this allegation means.  While Canal argues that the intended use of the Project could not have occurred prior to the Association's formation in November 2004, I find that the date the Association was formed is not controlling.  The Association's complaint does not link its formation with the date damages started.  Instead, it links damages to when the areas of the Project were put to their intended use.  If this occurred before the Association was formed, and that damage occurred during the applicable policy periods, I find that Canal would have a duty to defend the Association.  *See Hoang*, 149 P.3d at 801-04.

The issue is whether the intended use of the project began only upon completion of the Project, which appears to have occurred outside the date of policy coverage, or before– and if so, whether that occurred during the period of time Canal insured Genex.  Hartford cites a case from this Court, *EMC Ins. Cos. V. Mid-Continent Cas. Co.*, 884 F. Supp. 2d 1147 (D. Colo. 2012), for the proposition that "first put to its intended use" in the context of a construction defect claim includes deficiencies that were put to their intended use while construction is ongoing.

In the *EMC* case, the allegations in the complaint were similar to this case.  It was alleged that "these and other errors, deficiencies and defects ... have caused, and continue to cause, actual property damage and/or other losses to the Association, and

-10-

consequential damage to, and the loss of use of various elements of the Project, *over time from the date those areas were first put to their intended use.*"  *EMC*, 884 F. Supp. 2d at 1163 (emphasis added).  The insurer refused to defend based on "ongoing operations" language in a "products completed operations hazard" provision, which it argued limited coverage to damages arising before the contractor's operations were completed.  *Id.* at 1163-64.  It further argued that the complaint failed to allege that any damage occurred before work on the project was complete and that there was thus no duty to defend.  *Id.*

Judge Babcock disagreed with the insurer's position, finding that "the damages 'might' have arisen during [the contractor's] ongoing operations", as it "leaves open the possibility that the identified areas were 'first put to their intended use' by a subcontractor or other contractor."  *EMC*, 884 F. Supp. 2d at 1164.  He also found, alternatively, that even if "first put to its intended use" means that an area was "'completed', that still does not mean that damages did not begin to flow during [the contractor's] ongoing operations.  *Id.*  He noted that:

> ongoing operations and completed work need not be mutually exclusive at this stage. The complaint alleged deficiencies, errors, and defects in a host of areas, including roofs, balconies and decks, civil/grading/site work, the parking garage, plaza deck, windows and doors, and stone facade system, to name a few. Under paragraph 42's allegation, it is possible (and in fact probable) that one of these areas, for example the grading, was put to its "intended use," and [the contractor] then moved on to work on another area, perhaps the parking structure. By the allegation, damages from defective grading could have begun to flow, but Orr still has ongoing operations because it is working on the parking structure.

*Id.* In sum, Judge Babcock stated that "contrary to other cases in which an allegation unambiguously averred that damages arose after operations were completed, here the damages 'might' have arisen during the contractor's operations." *Id.* at 1165. Accordingly, he found that "the 'ongoing operations' language. . . did not preclude coverage" and "therefore did not immunize [the insurer] from a duty to defend." *Id.*

While Canal argues that the case is not persuasive, I disagree.  Even though the court was analyzing language in the "products completed operations hazard" provision of the policy which is not at issue here, it was doing so within the context of the duty to defend.  The language Judge Babcock analyzed was almost identical to the language of the underlying complaint in this action.  As in that case, the Association's complaint at issue alleges deficiencies, errors, and defects in a host of areas, including the foundation system, structural and other floor systems, grading and drainage, facade, roofing systems, elevated decks, balconies or walkways, and mechanical systems, to name a few.  Under that allegation, it is at least possible that one of these areas, for example the foundation or grading and drainage systems, were put to their "intended use" before the entire Project was constructed, such as when such as the plaza decks or walkways of the Project were completed.

Thus, although the complaint does not specify what period the construction of the Project and/or alleged negligence of the Defendants occurred, the alleged facts potentially fall within the scope of coverage.  Indeed, Canal has not disputed that the construction of the Project occurred at least in part during the period of time it insured Genex.  Accordingly, I find that Canal's motion to dismiss must be denied as to the

argument that Canal did not owe a duty to defend based upon the underlying complaint's allegations.

Finally, I note that Canal also argued in its reply that it has no duty to defend because the faulty workmanship exclusion applies.  I decline to consider this argument since it was raised for the first time in the reply brief.  *See E.E.O.C. v Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, (D. Colo. 2007) ("When a party puts forth new arguments in a reply brief, a court may avoid error by either: (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply.") (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006)).

IV.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Third-Party Defendant Canal Insurance Company's Motion to Dismiss Hartford Casualty Insurance Company's Amended Third-Party Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) filed October 30, 2012 (ECF No. 57) is **DENIED**.

Dated:  March 12, 2013

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge